IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| MARCUS R. JOHNSON,<br><br>    Plaintiff<br><br>vs.<br><br>DR. MONTAG, SCI FOREST'S DENTIST,<br><br>    Defendant | 1:22-CV-00186-SPB<br><br>RICHARD A. LANZILLO<br>CHIEF UNITED STATES MAGISTRATE JUDGE<br><br>REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF NO. 57 |

I.    Recommendation

Presently pending before the Court is a motion for summary judgment filed by Defendant Dr. Montag ("Dr. Montag"), a dentist at the State Correctional Institution at Forest. *See* ECF No. 57. The motion is before the Undersigned for Report and Recommendation pursuant to 28 U.S.C. §636(b)(1). For the reasons stated herein, it is respectfully recommended that the Defendant's motion be GRANTED and that judgment be entered in favor of Dr. Montag and against the Plaintiff, Marcus R. Johnson ("Johnson").

II.    Report

A.  Introduction and Procedural Background

Johnson initiated this lawsuit against Dr. Montag, Derek F. Oberlander, the Superintendent of SCI-Forest, and John Wetzel, the former Secretary of the Pennsylvania Department of Corrections. *See* ECF No. 31 (Amended Complaint). Johnson alleged that each defendant violated his Eighth Amendment rights by implementing policies and taking actions

1

that reportedly led to the denial or delay of dental care at the onset of the COVID-19 pandemic. *See id.*; *see also* ECF No. 41, p. 2 (Report and Recommendation on Motion to Dismiss). By previous order, the Court dismissed the claims against Defendants Oberlander and Wetzel. *See Johnson v. Montag*, 2023 WL 5621355, at *1 (W.D. Pa. Aug. 31, 2023); ECF No. 45. The Court declined to dismiss Johnson's Eighth Amendment deliberate indifference claim against Dr. Montag.

Upon the conclusion of discovery, Dr. Montag moved for summary judgment. *See* ECF No. 57. He also filed a brief in support of his motion (ECF No. 58), a Concise Statement of Material Facts (ECF No. 60), as required by our Local Rules, and appendix of exhibits, including the transcript of Johnson's deposition (ECF No. 59). Johnson filed a brief in opposition to Dr. Montag's motion (ECF No. 69), an appendix containing several exhibits (ECF No. 76), and a responsive Concise Statement of Material Facts[1] (ECF No. 68). Johnson's Concise Statement included additional statements of material fact, to which Dr. Montag responded. ECF. No. 78. Dr. Montag also filed a Reply Brief (ECF No. 77), and Johnson was granted leave to file a Sur-Reply Brief (ECF No. 81). Montag's motion is now ripe for disposition.

B. Standard of Decision

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if

---

[1] An identical responsive Concise Statement is docketed at ECF No. 74. The earlier filing is referenced herein.

proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

Finally, where, like here, a party is proceeding pro se, the court has an obligation to construe the pro se party's pleadings "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

For example, this requires the Court to "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Holley v. Dep't of Veteran Affs.*, 165 F.3d 244, 248 (3d Cir. 1999). "However, despite this liberal interpretation, the same standards for summary judgment apply to pro se litigants." *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009) (citing *United States v. Asken*, 2002 WL 32175416, at *1 n.11 (E.D. Pa. Oct. 28, 2002)). In other words, the party opposing summary judgment, whether or not pro se, "must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324). *See also Kwanzaa v. Tell*, 2024 WL 2991194, at *5 (D.N.J. June 14, 2024).

C. Material Facts

Unless otherwise noted, the following facts derive from the parties' Local Rule 56(B)-(C) Concise Statements of Material Facts and responsive Concise Statements. *See* ECF No. 60; ECF No. 68. Beginning in the spring of 2020, the DOC significantly restricted dental procedures in correctional institutions due to the COVID-19 pandemic. ECF No. 60, ¶ 2. On April 9, 2020, after the implementation of COVID-19 restrictions, Johnson began to experience tooth pain. *Id.*, ¶ 5. Montag was notified of Johnson's dental discomfort. *Id.* Based on Johnson's symptoms at the time, as well as the COVID-19 restrictions in place, Dr. Montag prescribed Johnson penicillin and ibuprofen.[2] *Id.*, ¶ 6. In response to a sick call from Johnson on April 17, 2020, Dr. Montag prescribed a different antibiotic (penicillin to clindamycin), re-prescribed ibuprofen, and told Johnson that he would be scheduled for an appointment as soon as the COVID-19 restrictions were lifted. *Id.*, ¶ 7. Ten days later, on April 27, 2020, in response to a sick call

---

[2] In his responsive concise statement, Johnson admits that Dr. Montag prescribed the antibiotic and pain relief medications, but states that the restrictions in place did not prevent Montag from examining him in person. *See* ECF No. 68, ¶ 6.

4

request from Johnson in which he related continued pain, difficulty eating and sleeping, and asking to be seen, Dr. Montag ordered more ibuprofen and submitted a request for a "soft diet" for Johnson. *Id.*, ¶ 9. Johnson's dental records show that the DOC could not accommodate Dr. Montag's request for a soft diet because Johnson adhered to a Kosher diet, which meant he would have had to revoke his religious dietary preference to receive a soft diet. *See* ECF No. 59-3, p. 26. *Id.* Johnson did not revisit the topic of a soft diet with Dr. Montag. ECF No. 60, ¶ 11. Johnson submitted sick calls regarding his tooth pain on May 5, 2020, May 12, 2020, and May 27, 2020. *Id.*, ¶¶ 12-14. Each time, Dr. Montag refilled the ibuprofen prescription and advised Johnson that he would be seen as soon as the pandemic-related restrictions were lifted. *Id.*

Then, on June 5, 2020, Johnson was directed to see Dr. Montag, but a corrections officer advised that Johnson was with his counselor and the appointment would have to be rescheduled. *Id.*, ¶ 15. Four days later, on June 9, 2020, Dr. Montag personally examined Johnson and performed a pulpotomy, a less invasive procedure where the pulp that resides in the main part (or crown) of the tooth is taken out, but the roots are left in. *Id.*, ¶ 16. Dr. Montag also prescribed further antibiotics and pain relief medication.[3] *Id.*

On June 24, 2020, all DOC facilities were sent a "Limited Dental Reopening Plan," which permitted certain procedures, provided the facility followed certain guidelines and complied with the use of personal protection equipment. *Id.*, ¶ 18. Because SCI-Forest did not have appropriate air filtration systems in place, however, dental procedures were still limited to

---

[3] Johnson admits that Dr. Montag examined him and prescribed medication during this appointment. Johnson admits that Dr. Montag performed some procedure, which Johnson describes as involving a Q-tip, but denies that Dr. Montag performed a pulpotomy. ECF No. 68, ¶ 16. Johnson's denial is belied by his medical records, which memorialize that the procedure was performed on June 9, 2020. *See* ECF No. 59-3, pp. 15-16. Johnson has not demonstrated a genuine issue of material fact concerning Dr. Montag's having performed a pulpotomy.

5

only "emergency" or "urgent" cases, and other treatments that do not produce aerosols. *Id.*, ¶ 19. Dr. Montag examined Johnson again on June 29, 2020, and on July 17, 2020. *Id.*, ¶¶ 20-21. Johnson was advised that he would be tested for COVID-19 the next week and if the results were negative, he would be scheduled for a root canal procedure. *Id.*, ¶ 22. Dr. Montag performed a root canal on August 3, 2020. *Id.*, ¶ 23. Since that procedure, Johnson has not experienced any further tooth discomfort. *Id.*, ¶ 24.

### D. Discussion and Analysis

Johnson claims that Dr. Montag acted with deliberate indifference to his serious dental needs in violation of his rights under the Eighth Amendment to the Constitution and seeks redress of this violation pursuant to 42 U.S.C. § 1983. Johnson's claim is based on Dr. Montag's delay in performing a root canal on his tooth to alleviate Johnson's severe pain. Dr. Montag responds that during the period of COVID-19 mitigation restrictions, he provided Johnson with medically appropriate care in the form of medications for pain, antibiotics to prevent infection, and a pulpotomy. He further asserts that the root canal procedure was not delayed for any non-medical reason but, rather, based on the COVID-19 mitigation restrictions, which themselves were intended to protect the health of all persons in the prison, including Johnson, and Dr. Montag's professional judgment that Johnson's condition did not constitute an emergency. Dr. Montag argues that the record supports nothing more than Johnson's disagreement with his treatment decisions and medical judgment.

The Eighth Amendment protects inmates from "cruel and unusual punishment." U.S. Const. amend. XIII. Prison officials have a duty to provide inmates with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468

U.S. 517, 526-27 (1984)). In the medical context, an inmate alleging an Eighth Amendment violation must demonstrate that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Accordingly, the inmate must produce evidence sufficient to support findings that he had a serious medical need and that prison officials, by affirmative acts or omissions, were deliberately indifferent to that serious medical need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Dr. Montag does not dispute that a decaying or diseased tooth satisfies the "serious medical need" element of the claim. He strenuously disputes that he acted with deliberate indifference to that need.

Deliberate indifference in this context can be shown by a failure to provide care, the delay of medical care for non-medical reasons, or denial of reasonable requests for treatment. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). However, an inmate's mere disagreement or dissatisfaction over a course of treatment does not amount to deliberate indifference. *See James v. Pa. Dep't of Corr.*, 230 Fed. Appx. 195, 197 (3d Cir. 2007); *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases) ("an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim."). Such complaints fail as constitutional claims because "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993), and "the exercise by a doctor of his professional judgment is never deliberate indifference," *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). Based upon these principles, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v.*

*Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192, 195-96 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)). Similarly, "[a]llegations of negligent treatment are medical malpractice claims, not constitutional violation claims." *Estelle*, 429 U.S. 97.

But "there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements," such as where prison officials, "with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." *Palakovic v. Wetzel,* 854 F.3d 209, 228 (3d Cir. 2017) (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)) (internal citation omitted). Prison officials also may not deny reasonable requests for medical treatment when such "denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'" *id.* (quoting *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346 (internal citation omitted)), or intentionally refuse to provide care where the need for such care is acknowledged, *id.* (citing *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985)).

1. Dr. Montag is entitled to summary judgment because the record cannot support a finding that he failed to exercise his medical judgment relative to his treatment of Johnson's dental condition or that he delayed Johnson's root canal for nonmedical reasons.

Johnson contends that Dr. Montag was deliberately indifferent to his serious dental need by deferring his root canal procedure while he treated his condition with pain medication, antibiotics, and a pulpotomy during the time the medical department was operating under COVID-19 mitigation restrictions. The record demonstrates, however, that Dr. Montag

exercised his professional judgment in deciding the appropriate treatments and timing of treatments for Johnson based on his symptoms and the COVID-19 mitigation restrictions. This case does not involve a complete denial of care. The record confirms that Dr. Montag promptly prescribed antibiotics and ibuprofen upon Johnson's first report of tooth pain on April 9, 2020. When these medications did not relieve Johnson's discomfort, Dr. Montag tried a different antibiotic and continued his prescription for ibuprofen. When these medications did not relieve Johnson's pain, he performed a pulpotomy upon the affected tooth. Ultimately, Dr. Montag performed the root canal.

The record includes evidence that the medications and treatment provided by Dr. Montag before the root canal did not relieve Johnson's pain, but it does not support that Dr. Montag failed to exercise medical judgment in attempting these treatments before the root canal or that he failed to exercise medical judgment when he assessed that Johnson's condition did not present a dental emergency within the meaning of the COVID-19 restrictions under which he was required to operate. To the contrary, in his declaration, Dr. Montag explains that his decision to treat Johnson as he did was based on "my professional, medical opinion that he was not experiencing a dental emergency and that prescribing him pain medication and antibiotics was appropriate under the circumstances." ECF No. 59-1, ¶ 6. Johnson disagrees with Dr. Montag's assessment. ECF No. 68, ¶ 7. But an inmate's disagreement with a medical professional's exercise of professional judgment in providing medical treatment does not amount to deliberate indifference. *See Rivera v. Little*, 2024 WL 3511619, at *9 (July 23, 2024) (citing *Davis v. Superintendent, Somerset SCI*, 597 Fed. Appx. 42, 45 (3d Cir. 2015) (explaining that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments" (internal

quotation marks and citation omitted)). That is to say, federal courts defer to prison medical authorities in the diagnosis and treatment of patients, and "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment...(which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (citation omitted).

To overcome the presumption that Dr. Montag's treatment was a proper exercise of his professional judgment, Johnson must point to "extrinsic evidence or medical expert testimony to show that the treatment provided fell below a professional standard of care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 536 (3d Cir. 2017). Put another way, to avoid summary judgment, Johnson must present evidence demonstrating that the course of treatment offered by Dr. Montag amounted to "a substantial departure from accepted professional judgment." *Id.* Johnson has not done so. He has presented no expert medical evidence supporting his contention that Montag's treatment fell below the professional standard. Instead, he has presented his own declaration as well as those of two other inmates. *See* ECF Nos. 69-3. 69-4, and 69-5. And while all of those declarations reference Johnson's tooth pain and the medical treatment Montag provided over a period of four months, none of them present competent evidence challenging Dr. Montag's medical judgment as deviating from professional standards of care. *See, e.g., Tobert v. Weiner*, 2024 WL 556658, at *10 (E.D. Pa. Feb. 12, 2024) (plaintiff offered no evidence that nurse's response deviated from the standard of care so as to amount to deliberate indifference). Thus, because there is no dispute of material fact on the deliberate indifference of Montag's actions, summary judgment should be entered in his favor. *See, e.g., Washington v. Barnhart*, 2023 WL 5607513, at *2 (3d Cir. Aug. 30, 2023) (summary judgment properly awarded to eye doctor where plaintiff failed to present any evidence that doctor's treatment was a "substantial departure

from accepted professional judgment"); *see also Estelle*, 429 U.S. at 105-06, 107 (no claim of deliberate indifference is made out where a significant level of care has been provided … and all that is shown is that the prisoner disagrees with the professional judgment of a physician").

Although Johnson claims that his root canal procedure was unnecessarily delayed, the summary judgment record demonstrates otherwise. Pandemic protocols substantially limited Dr. Montag's ability to perform any dental procedure that produced aerosols, including root canals. This Court and others in this Circuit have found that a delay in dental treatment due to COVID-19 mitigation measures is not the sort of delay in treatment for non-medical reasons that can amount to deliberate indifference. *See e.g., Pannebaker v. Trotta,* 2024 WL 2054993, at *4 (M.D. Pa. May 8, 2024); *Jones v. Sorbu,* 2021 WL 365853, at *6 (E.D. Pa. Feb. 3, 2021) (denying preliminary injunctive relief on an Eighth Amendment claim where the plaintiff could not show a reasonable likelihood of success on the merits based on a delay in dental treatment due to COVID-19 protocols).

Johnson contends that there is evidence in the record demonstrating that Dr. Montag was not adhering to the COVID-19 restrictions. *See* ECF No. 69, p. 9. He stated that Dr. Montag's response that "no dental treatments were being done due to COVID lockdown" was erroneous because policy permitted emergency treatments. *Id.* This, Johnson contends, creates a genuine issue of material fact as to Dr. Montag's credibility. As evidence, he cites to his own declaration and a written response to a sick call slip. ECF No. 69-2; ECF No. 69-5. Johnson's argument lacks merit. Johnson's sick call request is dated May 21, 2020. By that date, Montag had already exercised his professional judgment and considered Johnson's condition non-emergent. While the COVID-19 restrictions permitted emergency dental procedures, the dispositive question presented by Dr. Montag's motion for summary judgment is not whether the Court or a

11

jury might consider Johnson's symptoms to have presented an emergency justifying a departure from COVID-19 restrictions. Rather, the question is whether Johnson has produced evidence to support a finding that Dr. Montag failed to exercise his medical judgment in determining that his symptoms did not present such an emergency. Johnson has not.

Through his own declaration and deposition testimony and the declarations from other inmates, Johnson has produced evidence that he experienced severe pain and a "little over ten pound" weight loss during the treatments provided by Dr. Montag between April and August of 2020. *See e.g.*, ECF No. 69-2, pp. 2-4. *See also* ECF No. 59-4, p. 10 (Johnson's deposition testimony: "my weight fluctuated from probably about 185 to 174); ECF Nos. 69-3, 69-4, 69-12. But nothing in the record creates a genuine issue of material fact upon which a jury could reasonably disregard Dr. Montag's medical judgment that Johnson's condition did not present an emergency warranting a deviation from then-existing COVID-19 protocols. *See, e.g., Williams v. Wexford Health Sources, Inc.*, 2021 WL 3722799, at *8 (S.D. Ill. Aug. 23, 2021) (plaintiff failed to rebut dentist's testimony that, in his professional judgment, replacing plaintiff's denture was not an emergency medical need); *Tucker v. Cox*, 2020 WL 5947000, at *5 (E.D. Wis. Oct. 7, 2020) (disagreement between prison and his dentist about whether dental pain is an emergency is insufficient, by itself, to establish an Eighth Amendment violation) (citation omitted). And finally, while the record is devoid of medical evidence to support that Dr. Montag erred in his determination that Johnson's condition did not present an emergency, any such error would have constituted medical negligence, at most, and therefore insufficient to support a finding of deliberate indifference. *See id.*

The record also includes no evidence that Dr. Montag consciously provided Johnson with "an easier and less efficacious" treatment plan based on an ulterior motive, such as cost savings

or monetary incentive. *West*, 571 F.2d at 162; *see also Miller v. Chest Cnty. Commissioners*, 2024 WL 3606334, at *5 (E.D. Pa. July 31, 2024). Here, Johnson contends that Dr. Montag's continued prescriptions of ibuprofen and antibiotics over a course of multiple months was less efficacious because the medication did not relieve his symptoms. *See* ECF No. 69, p. 8. But again, he has presented no evidence that Dr. Montag's treatment decisions were based on any factor other than his own medical judgment, including consideration of COVID-19 mitigation restrictions, which are inherently medical in nature.

E. Conclusion

Johnson has failed to demonstrate the existence of any genuine issue of material fact that would preclude the entry of summary judgment in favor of Dr. Montag. Accordingly, it is respectfully recommended that Dr. Montag's motion for summary judgment be granted that judgment be entered in his favor.

III. Notice Regarding Objections

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72((b)(2), and Local Rule 72(D)(2), the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72(D)(2).

DATED this 9th day of August, 2024.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

14